May it please the Court, I'm Matt Adams with Northwest Immigrant Rights Project on behalf of Damian Bromfield, the petitioner. I'd like to reserve one minute for rebuttal. The Department of State's own country reports details violence and widespread acts of brutality committed against gay men in Jamaica on account of their sexual orientation. It discusses mob violence, stabbings, and targeted shootings by both police officers, prison officials, vigilantes, and mobs. The laws of Jamaica target gay men. They punish them with up to ten years imprisonment for any intimate conduct, whether in private or public. Moreover, they face further persecution in prison. All of this is in the record. These are undisputed facts that were presented by Mr. Bromfield. Nonetheless, the Board of Immigration Appeals and the immigration judge determined that when Mr. Bromfield appeared before the judge without a legal attorney, that he failed to demonstrate that he was entitled to withholding of removal under the Immigration and Nationality Act or relief under the Convention Against Torture. The government encourages this Court to treat the case in general terms in order to avoid the errors made by the immigration judge. But the government errs in asserting that an applicant for withholding and relief under CAT need demonstrate past persecution to qualify. The immigration judge made a legal error in distinguishing this Court's decision in Caruni simply because Mr. Bromfield has not experienced past persecution. Similarly, the government is arguing that a person who has not experienced past persecution cannot meet the higher burden of demonstrating a more likely-than-not chance that they will face persecution or torture. They argue that it would be too speculative. But this directly contradicts the controlling case law of this Court and the governing regulations and statute. This Court has repeatedly made clear that even individuals who have not faced past persecution may qualify for withholding and relief under the Convention Against Torture. In Comalthus, this Court said that country conditions alone can demonstrate eligibility under the Convention Against Torture. In Al Harvey, they said that the record alone could demonstrate eligibility for withholding, even though in that case the individual had filed a fraudulent application and lied in court. Let me just ask you whether or not that's the argument that the Board, and I guess the I.J. as well, required past persecution. I guess it comes from the I.J.'s discussion of Caruni v. Gonzales. Right. Is that right? That's right. Now, did the I.J. really say that he was requiring past persecution, or did he just say the present case is distinguishable from? Yes. He said Caruni is inapplicable, because that it did not – because Mr. Bromfield didn't show past persecution. Does that mean that he was holding that he had the – that he was requiring the Petitioner to show past persecution, or was he just saying that that case is distinguishable? Well, he was distinguishing the controlling precedent, which is very persuasive in why Mr. Bromfield is entitled to withholding. And I think that's also how the government reads it. If you look at page 20 on their brief, they talk about someone without demonstrating past persecution has a claim that's too speculative. And I think one of the principal errors made by the immigration judge and the government in their brief is their failure to even address the fact, one of the principal components of Mr. Bromfield's claim. And that is that the laws of Jamaica themselves target individuals in Petitioner Social Group. It's not just police officials, prison officials, and individuals. But the laws punish gay men with up to 10 years imprisonment. And in prison, the record makes clear they're separated from the population and subject to further abuse by prison officials. And the Prime Minister has been adamant in his defense of these laws. So you don't just have individuals acting. You have a system. And where you have government policies and laws that target members of a particular social group, it further encourages individual members of society and vigilantes to exercise similar violence against members of that particular social group. The immigration judge, like the government in its brief, errs in minimizing the harm that was suffered, that is suffered by homosexuals in Jamaica. The government states that all we're talking about are mere acts of discrimination and perhaps harassment. And they cite the cases discussing teasing and discrimination. The immigration judge likewise talks about discrimination and random acts of violence. The government calls the conditions in the country reports as simply unfortunate. These dismissive labelings contrast sharply with what's found in the record when the government's own country conditions report. They do not. Is entitled to withholding of removal if, with respect to Jamaica, without regard to what may have happened to him. Without regard to, that is the assertion of my argument, that any individual under the country conditions reports who is a gay person from Jamaica faces persecution and torture under the laws of Jamaica and the country conditions report further detail that the police officers, prison officials, vigilantes, mobs, all of them are targeting gay individuals. Sotomayor, where these come out? I think under this Court's decision in Hernandez-Montiel that they've held, that the sexual identity of an individual is so inherent to their nature that they should not be forced to argue or demonstrate that they come out or that they are not able to, to closet their behavior. But of course. Does it follow from that that any person who claims to be gay should be entitled to withholding removal? No. I think that's a question of fact, whether they are indeed a gay individual or if they're not gay, that they can demonstrate in the record that they, that there's, it's more likely than not that they would be determined to be a gay individual in that country. Of course, in this case, it's undisputed that he's a gay individual. He was placed into removal proceedings precisely on account of misdemeanor violations for gay conduct, and the government put in the police reports with all their salacious details, and it's there in the record. The judge nor the government has ever challenged his sexual orientation. But the record demonstrates that the laws, the prison officials, the police officers, apart from individual community members and vigilantes, are all targeting people in his social group because of their sexual orientation. And nor can these claims be dismissed as random acts of violence. The judge stated in his opinion that while these conditions are unfortunate, he said, and if I can quote, "...while I certainly depor acts of violence, I take note of the holdings such as Rustomian for the proposition that random acts of violence do not constitute persecution." But these are anything but random. These are targeted at people in Petitioner's social group precisely because of their sexual orientation. Gay men are not simply unlucky victims of random violence. Rather, police officers, prison officials, the laws of Jamaica target them precisely because of their membership in this particular social group. It is this type of dismissive labeling, the judge's failure to even look at the fact that the country reports talk about laws penalizing, targeting, and punishing gay men, the failure of the judge to even look at the police reports discussion of police officers that led to his conclusion that Mr. Bromfield had not demonstrated that he is eligible for relief. In addition, if you look at the immigration judge's analysis under the Convention Against Torture, the immigration judge in that instance criticized Mr. Bromfield's statement about whether he feared the government of Jamaica. But in his analysis of whether the government is an actor, the immigration judge not only did he misquote Mr. He then failed to even acknowledge that in the reports it talks about police officers, the quintessential actors of the state targeting gays. And Mr. Bromfield testified that he wasn't scared of police officers. What evidence is there that would support a conclusion that there would be torture? If you look at the definition of torture as defined by the regulations, and for example in 8 CFR 208.18, it talks about any act that constitutes an extreme form of cruel and inhuman treatment. So when you're talking about stabbings, when you're talking about targeted shootings, or even prolonged imprisonment, in fact, section 208.18A4 says that mental pain or suffering alone is sufficient if prolonged. And of course, ten years imprisonment is certainly going to cause mental pain and suffering in a prolonged time period. And moreover, 208 section 16B2 talks about life or torture, and his life or freedom is threatened. Given that Mr. Bromfield is able to demonstrate that there is a clear probability that he will face persecution or torture by the government and by individual actors, we would request that this court order the BIA to grant his applications for relief, both withholding of removal and relief under the Convention Against Torture. Thank you. Mr. Stone. Morning, Your Honors. My name is Paul Stone, and I represent the Respondent. This is a criminal alien case where the alien was found removable for his conviction of sexual abuse of a minor, an aggravated felony under the INA. Because the petitioner was ordered removed for this crime, section 1252A2C bars the court from reviewing his claims that don't raise a constitutional claim, question of law, or a mixed question of law or fact. But even on the merits, he hasn't shown that the evidence compels the conclusion contrary to the board's. Don't we have jurisdiction under Ramadan? The court has, under Ramadan, the court has jurisdiction over constitutional questions, questions of law and questions of fact. There are really no facts. He was found credible. Is that correct? That's correct, Your Honor. But the question as to what he called his version of, we take it as true. That's correct, Your Honor. But the question as to whether a pattern or practice of persecution exists is a factual question for the board to decide. But the issues that he raises concerning the application of this Court's precedent, notwithstanding, those appear to be questions of law. Well, let me ask you, did you make a, did the I.J. or the board make a legal error essentially in requiring him to show past persecution? I, the I.J. and the B.I. didn't require him to make such a showing. The reason that was important to the immigration judge was because to be, one of the ways to qualify for withholding removal is to show an individualized threat of persecution. That is, someone somewhere would like to harm that person. He hasn't made any such individualized showing. What he's trying to show is that there's a pattern or practice of persecution, meaning no one in Jamaica even knows he's gay. He's never felt any threat there. He's never had any problems there. But the conditions, there's such a systematic persecution of homosexuals in Jamaica that he and all other homosexuals would be presumptively entitled to withholding removal and asylum. Shouldn't the judge have decided whether there was a pattern or practice? Well, I think that's what the immigration judge was doing when he said that when he took note of the country reports, noted that there was discrimination and violence against homosexuals, but that he didn't need his burden of persuasion or burden of proof for withholding removal. He said persuasion, which I don't think is right. But did he look at the fact that there's a statute that makes it criminal? That doesn't necessarily constitute persecution under this Court's precedent. For example, in Fisher v. INS, the Court held that Iran's enforcement of the law requiring women to wear headscarves wasn't persecution. In that case, the woman was a Christian, and it violated her personal beliefs to be forced to wear this headscarf. That's a little different than 10 years in prison, isn't it? Well, the case in Fisher actually doesn't talk about what the penalties were. I understand penalties in Iran for various crimes are higher than what we think are appropriate. But persecution doesn't – this Court's also said that persecution doesn't incorporate things that we would regard as harsh or even unconstitutional. I think in this country, a sentence that long probably would be unconstitutional. But it doesn't necessarily rise to the level of persecution. But that is one fact of many to look at to determine whether there is a pattern – a systematic pattern and practice of persecution of homosexuals in Jamaica. That's a fairly high bar because, you know, as I said earlier, that means all homosexuals in Jamaica would be automatically entitled to withholding removal. And this Court has found patterns of practice in very extreme cases, such as Croatians who had a pattern of practice of ethnically cleansing all Serbs in the areas that they took over. Armenians bent on ethnically cleansing a particular ethnicity and targeting and trying to eliminate an entire family. Does this case really turn on whether the I.J. was erroneously holding that you had to have prior persecution? No, I don't think so, Your Honor. That's the Karani case. The immigration judge did incorrectly say there was past persecution, but I think the point he was trying to get across was that the alien in Karani showed that he had been targeted in the past, that he had shown that there was an individual threat to him, combined with the other things he showed, such as under Islamic law, homosexuality is punishable by death. And Hezbollah was carrying out that law in Lebanon. His cousin, who was gay, was shot by Hezbollah and later killed for being gay. His companion was arrested and beaten by the militia, and he believed that his companion had informed on him. So he had established not only that he had experienced past harm, he'd been singled out for harm, but that there was this threat that he would do it again. If this immigration judge had found a pattern in practice, would he have granted withholding? I think he would have had to, Your Honor. Whether or not he's gay is not an issue. And establishing that he's a member of the group that would be persecuted, that would entitle him to withholding of removal. Moving on to the cat claim briefly, the cat claim has similar issues because he hasn't shown that there's any individual threat. Now, it is sufficient, country condition reports by themselves can be sufficient to establish cat protection. But he's got the same issue with cat that he does with withholding. He's essentially needing to show that the country condition reports are sufficient to compel the conclusion that he and all other homosexuals in Jamaica would be subject to torture. And that is a similarly broad claim to the withholding claim. Well, what's your definition of torture? It's the same as in the regulations, Your Honor. Which is? Let me see if I can give you the exact quote. It's in 1208.18. Torture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her information or confession, punishing him or her for an act he or she or a third person has committed. That would be the argument that would apply here. Or suspected of committing or intimidating or coercing him or her or a third person. It goes on in paragraph two. Torture is an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel and inhuman or degrading treatment or punishment that is not about to torture. Would imprisonment for life be torture? Well, if it were not a legitimate exercise of the government's prosecutorial authority, then I think it would be. Well, do you think that imprisoning gays just by the fact of being gay is authorized? Personally, I think it's awful. But, Your Honor, it's, they're imprisoning for the act of torturing a person for the acts they're committing. And this country has even allowed, after Bowers v. Hardwick, has affirmed states to prohibit homosexual conduct. So it's difficult to find. But after Lawrence? After Lawrence, fortunately, put that into doubt. I'm not clear what's going to happen. I think it put it to bed. Well, I think Lawrence, I was trying to recall this morning, actually. I think Lawrence was, the issue was equal protection because I think it treated men, gay men and straight men differently. So I don't know if that still allows any viability for these laws. But I hope it did put it to rest. But nonetheless, given that in this country such laws were permissible up until a few years ago, it's difficult to find that it's impermissible for Jamaica to have similar laws. Given the greater punishment, that does make it a little bit harder to question. But again, even for persecution, things that we would regard as unjust or even unconstitutional don't necessarily constitute persecution. The question here is whether it compels a conclusion that it does. The panel doesn't have anything further. I think that's it for me. Thank you. Thank you. If I may briefly, with regards to the fact, Mr. Bromfield is fortunate. He came to this country as a lawful permanent resident when he was 15. He has still not come out. He didn't sexually identify himself as a gay man until he was 19. Thus, he had no opportunity to be persecuted. He's fortunate in that respect. But this Court makes clear that even individuals who have not suffered past persecution, yes, it's a broad claim. All gay men who are placed in Jamaica face a clear probability of persecution and torture. But it's similar to this Court's holding in Mohammed that talks about female genital mutilation and creates a broad claim where any individuals in their circumstances certainly face this well or rather this clear probability of persecution or torture. And one last thing. The government cites the Fisher v. INS in regards to headscarves. And the Court discusses criminalization of certain social mores. This is a far cry from a case dealing with someone's sexual orientation, where this Court has already held in Hernandez Montiel that sexual orientation is an integral part of a human being. Thank you. We appreciate the arguments in this case. And the matter is submitted.
judges: B. Fletcher, Paez, Schwarzer